IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
In Admiralty
Case No. 2:20-CV-00035-M

CHRISTOPHER C. BAUM,                          )
                                              )
        Plaintiff,                            )
                                              )
v.                                            )
                                              )          ORDER
PCS PHOSPHATE COMPANY, INC.,                  )
*in personam*, and                            )
THE FREIGHT BARGE VESSEL, PCS 2,              )
OFFICIAL NUMBER 1089247, her tackle,          )
gear, apparel, *in rem,*                      )
                                              )
        Defendants.                           )

This matter comes before the court on the Amended Motion to Dismiss Unseaworthiness

Claim filed by Defendant PCS Phosphate Company, Inc. ("PCS" or "Defendant") [DE 25],

Plaintiff Christopher C. Baum's ("Baum" or "Plaintiff") response in opposition to the motion,

and Defendant's reply in support of the motion. For the reasons that follow, the motion is

granted.

I.      **Statement of Facts**

The following are factual allegations (as opposed to statements of bare legal conclusions,

unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the

operative Amended Complaint (DE 24), which the court accepts as true pursuant to *King v.*

*Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

On August 12, 2013, Baum began working for the North Carolina State Ports Authority

("NCSPA"), a subdivision of the State of North Carolina. Baum was paid by the NCSPA and

took orders only from his supervisors at the NCSPA. At all material times, Defendant PCS was not Baum's employer.

PCS mines, processes, loads, and ships phosphate products from its 12,000 acre mine and plant site in the Aurora area of Beaufort County, North Carolina. With its own fleet of tugboats and barges, including the Defendant Freight Barge Vessel PCS 2 (the "PCS 2"), PCS moves the phosphate products down the Pamlico River, down the Pamlico Sound, up the Neuse River, down the Intracoastal Waterway, and down the Newport River to the NCSPA facility in Morehead City, North Carolina ("Morehead City Port"), under a 99-year agreement between PCS and the NCSPA. On or before June 19, 2017, PCS had loaded and shipped phosphate products, using a tugboat and the PCS 2, to the navigable waters in the north-facing dock at the barge terminal at Morehead City Port.

At approximately 4:00 p.m. on June 19, 2017, Baum was called aboard the PCS 2 by his NCSPA supervisor to help move the Hatch Lid No. 7 as part of the unloading process. At approximately 4:10 p.m., Baum was inside of the handrails on the starboard side of the PCS 2 pulling a chain uphill to the east, when the Hatch Lid No. 7 failed, jammed on a rail, and suddenly stopped, injuring Baum's left arm, shoulder, neck, and back. Baum was removed from the vessel and taken to an Urgent Care facility, at which he was advised not to return to work until he could be seen by an orthopedist. Baum, as instructed, met with an orthopedist who diagnosed him with left shoulder pain and neck (cervical) pain, and who recommended cervical surgery.

## II.    Procedural History

Based on these facts, Baum alleges two claims for relief against Defendants: (1) "Unseaworthiness under the General Maritime Law," and (2) "Negligence under the General

2

Maritime Law." Am. Compl., DE 21. PCS responded by filing an answer to the second claim and the present motion seeking dismissal of the first claim. PCS argues that Baum is not covered by the warranty of seaworthiness because he was neither a "seaman" nor PCS' employee. Baum counters that he was performing a seaman's work and was not covered by the Longshore Harbor Workers Compensation Act ("LHWCA") and, thus, he is in fact covered under the warranty. PCS replies that Baum misapprehends the law governing the warranty of seaworthiness, and PCS repeats its contention that Baum is not covered.

## III.    Legal Standards

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of

3

illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

## IV. Analysis

PCS' motion raises a single question: whether the prevailing law permits Baum, a non-seaman, who was injured while working as a non-employee on a seagoing vessel, to recover on a claim challenging the vessel's seaworthiness. The court finds that the law does not.

First, it appears the parties agree that Baum, a state employee of the NCSPA, may not seek recovery for his injuries under either the Jones Act or the LHWCA. The LHWCA exempts state employees from its coverage (33 U.S.C. § 903(b)) and the Jones Act requires the injured person to be employed by the owner of the vessel on which he is injured (46 U.S.C. § 30104).

Therefore, Baum is limited to remedies offered under general maritime law, to the extent he qualifies.[1] In maritime law, the standard of care owed by a vessel owner to an injured party depends on the party's legal status. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354 (1991) ("Traditional seamen's remedies . . . have been 'universally recognized as . . . growing out of the status of the seaman and his peculiar relationship to the vessel . . . .'"). Baum contends that he falls into a category of individuals who, as non-employees performing "the work of seamen,"

---

[1] As a state employee, Baum may also be entitled to remedies under state law, but he makes no such claims here.

4

were injured by "an unseaworthy appurtenance of a vessel in navigable waters" as described by the Supreme Court in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946) and, therefore, he is entitled to assert a claim for "unseaworthiness" under general maritime law.[2] In *Sieracki*, the Court expanded the scope of the class of persons to whom the warranty of seaworthiness was owed from "seamen" to longshoremen, who were not directly employed by the ship on which the injury occurred. *Id.* at 96. In 1972, however, Congress amended the LHWCA to abolish the warranty claim described in *Sieracki* for anyone covered by the Act. *See United States Lines, Inc. v. United States*, 593 F.2d 570, 572 (4th Cir. 1979). Baum asserts that, because he is not employed by PCS and not covered by the LHWCA, he may maintain a claim under *Sieracki*.

The court finds that the current prevailing law in this circuit does not allow Baum to seek recovery under the theory of "unseaworthiness" described in *Sieracki*. While the Fourth Circuit has noted that "[t]he [1972] amendments, relating only to workers covered under the Act, had no direct effect on longshoremen like Speller who are covered under the F.E.C.A.," *United States Lines*, 593 F.2d at 572, the court has since determined that a plaintiff was not "entitled to the general maritime law warranty of seaworthiness" because "Congress specifically overruled *Sieracki* with the 1972 amendments to the LHWCA." *Harwood v. Partredereit AF 15.5.81*, 944 F.2d 1187, 1195 n.1 (4th Cir. 1991); *see also Babbitt v. Hanover Towing, Inc.*, 7 F. Supp. 2d 650, 653 (E.D.N.C. 1998) ("Fourth Circuit law permits a seaman no recovery under the doctrine of seaworthiness in the absence of an employment relationship between the parties."); *Walters v.*

---

[2] The court understands that by relying on *Sieracki* and claiming to have performed "the work of a seaman" when he was injured, Baum does not argue he is (or was) himself a "seaman" under general maritime law, which requires that (1) "an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission"; and (2) "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995))

5

*Dann Marine Towing, LC*, No. GLR-12-2310, 2013 WL 1562459, at *3-*4 (D. Md. Apr. 10, 2013) (plaintiff who was not a crewmember of the vessel on which he was injured was owed no duty of seaworthiness). Baum has not cited, and the court has not found, a binding or persuasive case in the Fourth Circuit defining "seaman" as a non-employee of the vessel on which he is injured.

Since 1972, the Supreme Court has not addressed specifically the issue of whether a non-employee may recover for injuries incurred on a seagoing vessel under a theory of "unseaworthiness"; however, the Court has found that "[w]hether under the Jones Act *or general maritime law*, seamen do not include land-based workers." *Chandris*, 515 U.S. at 358 (quoting *Wilander*, 498 U.S. at 348) (emphasis added). Baum does not dispute that he was a land-based worker at the time he was injured. Moreover, in concluding that the claim recognized in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970) – i.e., that an action lies under general maritime law for death caused by a violation of a maritime duty – does not preclude the pursuit of state remedies, the Supreme Court, in its discussion of the unseaworthiness doctrine, noted:

> The Court extended the duty to provide a seaworthy ship, once owed only to seamen, to longshore workers in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S. Ct. 872, 90 L. Ed. 1099 (1946). Congress effectively overruled this extension in its 1972 amendments to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq. See* § 905(b). **We have thus far declined to extend the duty further.** *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 629, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959) (unseaworthiness doctrine inapplicable to invitee aboard vessel).

*Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 208 n.6 (1996) (emphasis added).

This court acknowledges Plaintiff's argument that other district courts, even in this circuit, have recognized a viable claim under *Sieracki. See Douglas v. Ingram Barge Co.*, No. CV 3:04-0383, 2006 WL 8438651, at *1 (S.D. W. Va. Sept. 15, 2006) ("If claimant can meet the

6

test to establish that he was a seaman with respect to the barge, he is entitled, as a *Sieracki* seaman, to assert unseaworthiness claims."); *Mitola v. Johns Hopkins Univ. Applied Physics Lab'y*, 839 F. Supp. 351, 357 (D. Md. 1993) ("a plaintiff who can establish his seaman status by showing that his 'scientific duties 'contributed to the function of the vessel or the accomplishment of its mission," like the contribution made by the "surgeon crew member of a floating hospital'" may still be eligible for the benefits granted seamen by general maritime law."); *Meekins v. Prudential Lines, Inc.*, 1979 WL 6504713 (E.D. Va. Aug. 17, 1979) ("Nowhere in the [LHWCA] or its history does the [1972] Amendment affect the rights of the shipowner to seek indemnity, exoneration or contribution from anyone except the "employer" of the injured person covered under the Chapter."). The court finds that *Mitola* and *Meekins* are distinguishable because those courts do not address the issue presented here, and the court respectfully declines to follow the opinion in *Douglas* primarily because it appears that court does not consider the Supreme Court's findings in *Chandris* and *Yamaha Motor Corp.*

In concluding that the law in this circuit does not currently recognize a *Sieracki* claim, the court notes that individuals such as Baum might appear to be "in a gap" without a remedy; however, as demonstrated by this action, Baum and others may seek to recover under a negligence theory. Furthermore, the court does not perceive Baum to be an interstitial employee overlooked by the law; rather, Congress has considered state workers like Baum and expressly excluded them from coverage for injuries incurred while performing "the work of a seaman." *See* 33 U.S.C. § 903(b).

Case 2:20-cv-00035-M   Document 57   Filed 04/27/21   Page 7 of 8

## V.    Conclusion

Accordingly, the court concludes that current prevailing law does not permit Baum to seek recovery for his injuries under a theory of "unseaworthiness" as set forth in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946). Defendant's motion to dismiss Plaintiff's first claim for relief is GRANTED.

SO ORDERED this 27th day of April, 2021.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

8